IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 2000 Session

## STATE OF TENNESSEE v. MARK ANTHONY GRIFFIN

**Appeal from the Criminal Court for Knox County**
**No. 58944   Richard Baumgartner, Judge**

---

**No. E1999-00122-CCA-R3-CD**
**August 29, 2000**

---

The defendant appeals his convictions for aggravated robbery and attempted robbery, for which he received an effective nine-year sentence.  The defendant raises the following issues in this appeal: 1) whether evidence presented at trial was sufficient to sustain the guilty verdicts; 2) whether the trial court erred by not suppressing his confession; and 3) whether the trial court erred by denying the defendant's motion for dismissal based upon a violation of due process and denial of a speedy trial. We conclude the first two issues are without merit, but remand for another hearing on the due process/speedy trial issue.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part;**
**Judgments Vacated; and Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS AND ROBERT W. WEDEMEYER, JJ., joined.

Mark E. Stephens, District Public Defender; John R. Halstead (at trial) and Paula R. Voss (on appeal), Assistant District Public Defenders, Knoxville, Tennessee, for the appellant, Mark Anthony Griffin.

Paul G. Summers, Attorney General and Reporter; Clinton J. Morgan, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and Scott Green,  Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant appeals his convictions for aggravated robbery and attempted robbery, for which he received concurrent sentences of nine years and three years, respectively.  The defendant contends in this appeal: 1) the evidence presented at trial was insufficient to sustain the guilty verdicts; 2) the trial court erred by not suppressing his confession; and 3) the trial court erred by denying the defendant's motion for dismissal based upon a violation of due process and denial of

a speedy trial. After a thorough examination of the record, we conclude that the evidence is sufficient to support the convictions and that the trial court properly overruled the motion to suppress the confession. However, we remand for another hearing on the due process/speedy trial issue.


## FACTS

On February 16, 1993, there was a robbery at a video store in Knoxville. When the masked perpetrator entered the store, he was carrying a gun. After entering the video store, the perpetrator demanded that the clerk give him the money in the cash drawer. While waiting for the clerk to open the cash drawer, the perpetrator put his gun in the face of a customer who was checking out at the register. Already nervous, the perpetrator began to panic when the clerk started to fumble with the cash drawer and could not get it open. In a state of panic, the perpetrator grabbed the customer's wallet and fled.

On July 1, 1993, a Knox County detective interviewed the defendant. The defendant admitted his participation in the robberies at the video store. He stated that he told the store clerk to give him the money. When the clerk hit the cash drawer, the defendant stated that he got scared and snatched the customer's wallet from him.

The defense offered no proof at trial.

The jury convicted the defendant of the aggravated robbery of the customer and the attempted robbery of the store clerk.


## SUFFICIENCY OF EVIDENCE

The defendant contends that evidence presented at trial was insufficient to support his convictions for aggravated robbery and attempted robbery. We disagree.

A.      Standard of Review

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. *Id.* This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was

sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed.2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

B.      Analysis

Robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). Aggravated robbery is a robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1). One commits an attempted robbery when he acts with the intent to commit robbery, and his "conduct constitutes a substantial step toward the commission of the offense." Tenn. Code Ann. § 39-12-101(a)(3).

The testimony, in a light most favorable to the state, reveals that the perpetrator took the wallet from the customer, the taking being accomplished with a deadly weapon. Furthermore, it is not determinative whether the perpetrator took the wallet out of the customer's hand (as set forth in the defendant's confession), or from the counter in front of the customer (as set forth in the customer's testimony). Either constitutes a taking from the person of another. *See* State v. Nix, 922 S.W.2d 894, 900 (Tenn. Crim. App. 1995); State v. Howard, 693 S.W.2d 365, 368 (Tenn. Crim. App. 1985). Finally, the defendant admitted he was the perpetrator. Thus, the evidence is sufficient to support aggravated robbery.

The testimony, in a light most favorable to the state, further reveals that the perpetrator pointed a gun at the store clerk and demanded money. This clearly reflects an intent to commit robbery and a substantial step towards its commission. Again, the defendant confessed to being the perpetrator. Thus, the evidence is sufficient to support the conviction for attempted robbery.


## SUPPRESSION OF THE DEFENDANT'S CONFESSION

The defendant contends that the trial court erred by not suppressing the confession the defendant gave to the Knox County Sheriff's Department. We disagree.

A.      Standard of Review

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this Court unless the evidence contained in the record preponderates against them. State v. Carter, 988 S.W.2d 145, 149 (Tenn. 1999). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence and resolves any conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). However, this Court is not bound by the trial court's conclusions of law. State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998). The defendant has the burden of establishing that the evidence contained in the record

preponderates against the findings of fact made by the trial court. Braziel v. State, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

B.    Factual Background

The defendant argues that the confession he gave to the Knox County Sheriff's Department should have been suppressed as a result of an alleged promise that was made to him by the detective. The defendant alleges that he was told that if he cooperated with the Sheriff's Department, the detective would recommend that any sentence would run concurrently with federal charges he was then facing.

The defendant testified during the suppression hearing that he was told on June 29, 1993, that "if he was willing to cooperate ... and give a statement, then possibly [the detective would] speak with ... the D.A." The defendant, however, decided not to answer any questions at that time. The defendant also testified that on July 1, 1993, he agreed to talk to the detective who had approached him two days earlier. The defendant testified that the detective again told him that "if [he] would say anything [about the robberies, the detective] would speak to the D.A.'s office and possibly have [the] sentences ran (sic) concurrently." During the same hearing the detective testified that he did not remember telling the defendant anything about concurrent sentences. He further stated that if he did make a reference to concurrent sentencing, he was referring to other state charges since "[he] can't make any suggestions on federal issues."

The trial court declined to make a finding as to whether or not the detective made any representations about concurrent sentencing to the defendant; instead, the trial court assumed that he did for purposes of the ruling. The trial court found that the defendant had considerable experience in the criminal justice system and "decided he was in a position where he was going to be better off if he cooperated with the detective and gave a statement [to] see what he could do." The trial court concluded that the defendant's will was not "overborne" by the detective's conduct and denied suppression of the confession.

C.    Analysis

A confession must be "free and voluntary" to be admissible; thus, it must not be extracted by threats, violence, direct or indirect promises, or improper influence. State v. Smith, 933 S.W.2d 450, 455 (Tenn. 1996) (quoting Bram v. United States, 168 U.S. 532, 542-43, 18 S. Ct. 183, 187, 42 L. Ed. 568 (1897)). However, promises of leniency do not *per se* render a confession involuntary. Smith, 933 S.W.2d at 455. Only those confessions "compelled" by promises of leniency are considered involuntary. State v. Kelly, 603 S.W.2d 726, 729 (Tenn. 1980). The crucial issue is whether the conduct of law enforcement officers was such as to overbear the defendant's will to resist and bring about confessions not freely self-determined. Smith, 933 S.W.2d at 455-56; Kelly, 603 S.W.2d at 728.

Clearly, no promises were made to the defendant that any sentence would in fact run concurrently with any other sentence the defendant might receive in the federal system. At most, the defendant was told that if he cooperated with the detective in this case, the detective would speak to the prosecutor's office about the possibility of concurrent sentences. The trial court's conclusion that the defendant's will was not overborne by the detective's conduct is amply supported by the record. The confession was not compelled by promises of leniency and was properly admitted into evidence.

## PROSECUTORIAL DELAY

A.    State of the Record

The defendant contends the delay in his prosecution violated his due process rights and/or his right to a speedy trial. Specifically, he alleges that prosecutorial delay has made it impossible for him to receive sentences that would run concurrently with the federal sentence he received in July 1993. We conclude that this case must be remanded for another hearing on this issue.

The material facts relating to the alleged delay are difficult to determine from the record before the court. It is undisputed that the offenses were committed on February 16, 1993; the defendant was interrogated on June 29 and July 1, 1993; the defendant was indicted on July 24, 1995; and the defendant was ultimately tried on August 17, 1999. Exactly what else occurred between February 1993 and August 1999 is less clear.

Our examination of the record reveals that no testimony or documentary evidence was introduced by either party relating to prosecutorial delay. The record does contain transcripts of hearings on the motion to dismiss which include arguments of counsel, but no evidence. The technical record contains several defense motions relating to this issue which contain an alleged chronology of events and have several uncertified documents attached, none of which is evidence.

Under the circumstances we deem it appropriate to remand for a new hearing on prosecutorial delay. Nevertheless, we will address this issue based upon the record before us in order to assist the trial court upon remand.

B.    Facts

Prior to June 29, 1993, the defendant and his accomplice were arrested and being held in the Anderson County jail on charges unrelated to the subject robberies. On June 29, 1993, a Knox County detective drove to Anderson County to question the defendant and his accomplice about several video store robberies that had occurred in Knox County. The defendant initially agreed to talk to the detective, but later decided not to give a statement. These facts appear undisputed.

-5-

On July 1, 1993, the defendant and his accomplice were transferred to the Knox County jail. It is unclear from the record why the defendant was transferred to the Knox County jail. The defendant contends that it was because he was under "arrest" for the subject charges. Subsequent to the first hearing on the motion to dismiss, the state apparently turned over certain documents to defense counsel. Defense counsel filed a supplemental motion and attached uncertified documents reflecting that warrants were issued on July 1, 1993, but not served on the defendant. An alleged officer's report attached to the motion indicates that the warrants were "served on the defendant at the Knox County jail." Regardless, it is undisputed that the defendant gave a taped statement on July 1, 1993, admitting his participation in the subject robberies.

It is undisputed that on July 15, 1993, the defendant received a four-year sentence on federal charges. The defendant alleges that federal authorities sent Knox County a detainer letter in September 1993.

The state took no further action against the defendant until he was indicted on July 24, 1995. Defendant alleges that on October 29, 1996, the defendant was paroled from the federal penitentiary and released into the custody of officers from Knox County. On November 1, 1996, the defendant was arraigned on the Knox County charges, and a trial date was set for February 24, 1997. Trial dates were continued several times for reasons not set forth in the record. The defendant alleges that one continuance was at his request, and that he was in federal custody at the time one or more trial dates were set. He alleges that on June 27, 1997, the defendant was found to be in violation of his federal parole and ordered to serve the remainder of his four-year sentence. The technical record reveals a bond forfeiture in September 1997 based on the defendant's failure to appear; however, the forfeiture was later set aside.

The defendant alleges that on May 1, 1998, he was released from the federal penitentiary after serving the remainder of his sentence and transferred to Knox County. A new trial date was set for October 5, 1998. In the meantime, however, the defendant's bail was reduced, and the defendant was released from custody. On October 5, 1998, the defendant failed to appear for trial. He was allegedly arrested on February 26, 1999.

On August 17, 1999, the defendant was convicted by a Knox County jury of aggravated robbery and attempted robbery and sentenced to nine years for the aggravated robbery and three years for the attempted robbery. Both sentences were set to run concurrently with each other and concurrently "insofar as possible" with any time the defendant had remaining on his federal sentence.

C.     Trial Court's Ruling

The trial court found misconduct by the state and found the state delayed prosecution to gain a tactical advantage. The trial court concluded, however, that any potential prejudice to the defendant regarding the loss of possibility of concurrent sentencing could be remedied at sentencing. The trial court denied the motion. At sentencing, the trial court ran the subject sentences

concurrently with any time remaining on the federal sentence "insofar as possible."[1]  However, it appears likely that the federal sentence had already expired.  It is unclear from the sentencing hearing transcript whether the trial court reduced the actual length of each sentence in recognition of potential prejudice to the defendant as a result of prosecutorial delay.

## DUE PROCESS

We first examine the defendant's claim that prosecutorial delay constituted a due process violation.

A.    Legal Standards

A delay between the commission of an offense and the initiation of adversarial proceedings may raise due process concerns under the Fifth Amendment of the United States Constitution and Article I, § 9 of the Tennessee Constitution.  State v. Utley, 956 S.W.2d 489, 495 (Tenn. 1997) (citing United States v. Marion, 404 U.S. 307, 324-25, 92 S. Ct. 455, 465, 30 L. Ed. 2d 468 (1971)). To determine whether a due process violation has occurred when the state is aware that an offense has been committed, the defendant must establish: (1) a delay has occurred; (2) the delay caused prejudice to the defendant's right to a fair trial; and (3) the state caused the delay to obtain a tactical advantage or to harass the defendant.  Marion, 404 U.S. at 324, Utley, 956 S.W.2d at 495 (citing State v. Gray, 917 S.W.2d 668, 671 (Tenn. 1996)).  The most important question, although not determinative in every case, is whether the delay caused any prejudice to the defendant.  State v. Carico, 968 S.W.2d 280, 285 (Tenn. 1998).   The time between the commission of the offense and the commencement of prosecution will also be considered.  *Id.* at 284.

B.    Analysis

Due to the nature of the record before us, it is unclear whether the defendant was actually "arrested" on July 1, 1993.  If there was an arrest on July 1, 1993, there will be no reason to conduct a due process analysis upon remand.  Rather, the trial court will conduct a speedy trial analysis from the date of arrest until trial.  However, if there was no arrest prior to the return of the indictment, the trial court must conduct a due process analysis from the date of commission of the offense until the date of indictment.  Thus, the following due process analysis will apply only if the trial court finds that there was no arrest prior to indictment.

---

[1]The trial court's remarks indicate the difficulty which often arises in determining the impact of running a state sentence concurrently with a federal sentence.  The problem of concurrent/consecutive sentencing with federal charges is a recurring one in this court, primarily because this state and the United States are separate sovereigns.  *See* Derrick E. Means v. State, C.C.A. No. 02C01-9707-CR-00248, Shelby County (Tenn. Crim. App. filed August 13, 1998, at Jackson) (counsel was ineffective in failing to confirm that federal authorities would take immediate custody of inmate to serve sentence ordered to run concurrently with the federal sentence).

Firstly, it must be determined whether there was a delay. The Knox County Sheriff's Department was aware of defendant's involvement in the robberies at least by July 1, 1993. Thus, it is undisputed that there was a delay from this time until the return of the indictment in July 1995.

Second, it must be determined whether the delay was intentional by the state in order to obtain a tactical advantage over or to harass the defendant. No evidence was introduced concerning this factor; however, the state offered no explanation for the delay. The trial court found the delay was to obtain a tactical advantage. Upon remand, the trial court is not precluded from hearing testimony concerning this issue.

Finally, and most importantly, it must be determined whether the delay caused prejudice to the defendant's right to a fair trial. The primary prejudice the defendant asserts is that the delay caused the loss of the possibility of having his state sentences run concurrently with his four-year federal sentence imposed in July 1993.

We recognize that one can be prejudiced by losing the opportunity for concurrent sentencing. *See* Smith v. Hooey, 393 U.S. 374, 378, 89 S. Ct. 575, 577, 21 L. Ed. 2d 607 (1969); State v. Wallace, 648 S.W.2d 264, 270 (Tenn. Crim. App. 1980). However, we find nothing which indicates that loss of a mere possibility of concurrent sentences automatically requires dismissal of charges. *See* State v. Michael Dewayne Simmons, CCA No. M1999-00099-CCA-R3-CD, Davidson County (Tenn. Crim. App. filed February 29, 2000, at Nashville). This loss of opportunity must be examined in the context of this case.

The Tennessee Rules of Criminal Procedure provide that "if the defendant has additional sentences ... as a result of conviction in ... federal court, the sentence imposed shall be consecutive thereto unless the court shall determine in the exercise of its discretion that good cause exists to run the sentences concurrently ...." Tenn. R. Crim. P. 32(c)(2)(emphasis added). Thus, the subject sentences could not run concurrently with the federal sentence unless the trial court found "good cause" to do so. Upon remand it may be necessary for the trial court to address this issue. It would appear that the trial court has in fact found "good cause" since it attempted to run the present sentences concurrently with the federal sentence; however, it also appears likely that the federal sentence had expired. Nevertheless, the trial court may re-examine this issue in light of further evidence that may be introduced.

Although not addressed by the parties, we note that the defendant alleges in one of his memoranda that he was on "pre-trial release" from the federal charge at the time of commission of the subject robberies in February 1993. We are unable to conclusively make this determination based on the record before us. We do observe, however, that consecutive sentences are mandatory when a defendant was on bail for another offense when he committed the subject felony, and he is convicted of both offenses. Tenn. R. Crim. P. 32(c)(3)(C). As a result, the defendant must receive consecutive sentences if he was on bail for the federal offense at the time he committed the instant robberies. Thus, any argument that the delay prejudiced the defendant because he lost the possibility to have his state sentence run concurrently with his federal sentence is totally without merit should this be correct. The trial court should address this issue upon remand.

The defendant further alleges that the detective who interrogated him could not remember the exact statement he made to the defendant about concurrent sentencing. Thus, the defendant argues that the delay may have caused part of the detective's lapse in memory. We have previously affirmed the denial of the motion to suppress and, as did the trial court, assumed such representations were made. Nevertheless, we concluded such representations did not render the confession inadmissible. Therefore, the alleged lapse in memory was not prejudicial to the defendant's right to a fair trial.

## SPEEDY TRIAL

We now analyze the defendant's contention that he was denied the right to a speedy trial.

A.      Legal Standards

Without question, criminal defendants are constitutionally and statutorily entitled to a speedy trial. U.S. Const. Amend. VI; Tenn. Const. Art. I, § 9; Tenn. Code Ann. § 40-14-101. There is no set time limit within which the trial must commence; rather, consideration must be given to the circumstances of each case. The Tennessee Supreme Court has adopted the balancing test set forth in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972) as the method for determining whether a defendant's right to a speedy trial has been violated. State v. Wood, 924 S.W.2d 342, 346 (Tenn. 1996); State v. Baker, 614 S.W.2d 352, 353 (Tenn. 1981). If, after conducting this balancing test, it is concluded that the defendant was in fact denied a speedy trial, constitutional principles require that the conviction be reversed and the criminal charges dismissed. State v. Bishop, 493 S.W.2d 81, 83 (Tenn. 1973).

In conducting this balancing test, we are required to examine the conduct of both the prosecution and the defendant, focusing primarily on: (1) the length of the delay; (2) the reason for the delay; (3) whether defendant asserted his right to a speedy trial; and (4) whether defendant was prejudiced by the delay. Wood, 924 S.W. 2d at 346; Bishop, 493 S.W.2d at 84; State v. Jefferson, 938 S.W.2d 1, 12-13 (Tenn. Crim. App. 1996). The most important factor is whether the defendant was prejudiced by the delay. State v. Vance, 888 S.W.2d 776, 778 (Tenn. Crim. App. 1994). The most important inquiry with regard to prejudice is whether the delay impaired the defendant's ability to prepare a defense. *Id.* A delay of as long as two years standing alone will not support a finding of a speedy trial violation. *Id.* (citing Bishop, 493 S.W.2d at 84).

The triggering factor is the length of the delay. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530, 92 S. Ct. at 2192. In determining if there has been a violation of the constitutional right to a speedy trial, only the time between the commencement of adversarial proceedings and the commencement of the trial will be considered. Carico, 968 S.W.2d at 284. The return of the indictment or actual restraint by arrest triggers the speedy trial analysis. Utley, 956 S.W.2d at 492.

-9-

B.     Analysis

As previously stated, the triggering date for the speedy trial analysis upon remand will depend upon whether defendant was actually arrested on July 1, 1993.  If so, that will be the triggering date.  Otherwise, the triggering date for the speedy trial analysis will be the date of indictment; namely, July 24, 1995.

The first factor that must be examined is the length of the delay.  The delay in this case was either four years or six years.  Regardless, this delay is presumptively prejudicial to the defendant.  Barker, 407 U.S. at 530, 92 S. Ct. at 2192.  This delay clearly triggers an evaluation of the other Barker factors.  This factor weighs in favor of the defendant.

The court must next ascertain the reasons for the delay.  The record is silent as to the reason for the delay between July 1993 and July 1995.  A review of the record shows that the defendant was arraigned on the July 1995 indictment on November 1, 1996, allegedly after being released on parole from his federal sentence.  Subsequently, a trial date was set for February 24, 1997.  Trial dates were continued on several occasions, although the record is inconclusive as to the reasons.  Defense memoranda suggest reasons, some of which would not be the fault of the defendant.  Some suggested by the state would be the fault of the defendant.  Although there does not appear to be any bad faith on the part of the state from the date of indictment until trial, the trial court may re-examine this issue upon remand.

The court must next examine whether the appellant asserted his right to a speedy trial.  Assertion of the right to a speedy trial is given great weight in the determination of whether the defendant was denied this right.  Barker, 407 U.S. at 531-32, 92 S. Ct. 2192-93.  Failure to assert the right implies a defendant does not actively seek a swift trial.  State v. Wood, 924 S.W.2d 342, 348 (Tenn. 1996).  However, when an accused is unaware of pending charges against him, failure to assert the right cannot be weighed against him.  Doggett v. United States, 505 U.S. 647, 653-54, 112 S. Ct. 2686, 2691, 120 L. Ed. 2d 520, 529 (1992).  In this case the defendant was not arrested on the capias until October 29, 1996.  However, even after that date, the defendant did not assert his right to a speedy trial until the filing of his motion on May 26, 1999, less than 3 months before trial.  Thus, it appears the defendant did not actively seek a swift trial.  This factor weighs heavily in favor of the state.

Finally, and most importantly, it must be determined whether the defendant was prejudiced by the delay. The defendant has not established prejudice due to the alleged lapse in memory of the detective relating to representations of concurrent sentencing.  Thus, upon remand the defendant can only establish prejudice based upon the loss of concurrent sentencing.  As we discussed in the due process portion of this opinion, this issue must be determined under the directions of Tenn. R. Crim. P. 32(c)(3)(C) or 32(c)(2).

## DUE PROCESS / SPEEDY TRIAL SUMMARY

The most crucial issue upon remand will be whether defendant can establish prejudice resulting from the alleged loss of concurrent sentencing. Prejudice is required to establish a due process violation and is the most important factor in establishing a speedy trial violation. We further conclude that in order to establish prejudice, the defendant must establish the loss of the reasonable probability that his sentences would run concurrently with the federal sentence.

## DIRECTIONS UPON REMAND

Upon remand the trial court shall do the following:

(1)     The trial court should determine whether the defendant was under "arrest" by Knox County in July 1993 in order to determine the appropriate dates for the due process/ speedy trial analysis. For purposes of review, the trial court shall make findings as to the factors of any required due process analysis (prejudice and intentional delay for tactical advantage or harassment) and all 4 factors of the speedy trial analysis (length of delay, reasons for delay, the defendant's assertion of his right to a speedy trial, and prejudice).

(2)     The trial court should determine whether the defendant was on bail for the federal offense at the time he committed the subject robberies. If so, concurrent sentencing was not possible pursuant to Tenn. R. Crim. P. 32(c)(2)(C), and the defendant can not establish prejudice. There can be no due process violation, and this factor will weigh heavily against the defendant in conducting a speedy trial analysis.

(3)     If the defendant was not on bail for the federal offense at the time he committed the subject robberies, a further inquiry will be required. The trial court should determine whether concurrent sentencing was a reasonable probability pursuant to Tenn. R. App. P. 32(c)(2) ("good cause").

(4)     The trial court shall enter appropriate findings and an order. If the trial court overrules the motion to dismiss, it shall reinstate the judgments of conviction. If the trial court grants the motion to dismiss, it shall enter an order accordingly. Either party may appeal the trial court's ruling to this court. *See* Tenn. R. App. P. 3(b) and (c).

## CONCLUSION

We conclude that the evidence was sufficient to support the convictions, and further conclude that the trial court did not err in denying the motion to suppress the confession. However, the matter must be remanded for another hearing on the due process/speedy trial issue. Therefore, the judgment of the trial court is vacated, and the case is remanded for another hearing on the motion to dismiss.

_____
JOE G. RILEY, JUDGE