IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 27, 2001

## STATE OF TENNESSEE v. TIMOTHY TILLERY

**Direct Appeal from the Circuit Court for Blount County**
**No. C-6503     D. Kelly Thomas, Jr., Judge**

---

**No. E2000-01996-CCA-R3-CD**
**August 16, 2001**

---

The Defendant, Timothy Tillery, appeals as of right from the revocation of his probation. On appeal, he argues (1) that the trial court erred by refusing to dismiss the probation revocation proceeding because his right to a speedy trial was violated and (2) that the trial court erred by revoking his probation. We find no error; thus, we affirm the judgment of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court. JOSEPH M. TIPTON, J., delivered a concurring opinion. JAMES CURWOOD WITT, JR., J., concurred in the result.

Mack Garner, Maryville, Tennessee, for the Appellant, Timothy Tillery.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Edward P. Bailey, Jr., Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

This case comes to us with a rather complicated procedural history. In July 1992, the Defendant pled guilty in Blount County to the sale of cocaine. The Honorable D. Kelly Thomas, Jr., Criminal Court Judge for Blount County, sentenced the Defendant to eight years, with six months of the sentence to be served in the county jail and the remainder to be served in a community corrections program. Subsequently, in May 1993, the Defendant pled guilty in Knox County to possession of cocaine with intent to sell, and he was sentenced by the Honorable Mary Beth Leibowitz to eight years to be served in Knox County's community corrections program, known as the Community Alternatives to Prison Program (CAPP). Judge Leibowitz ordered this sentence to

be served consecutively to the Defendant's Blount County Sentence.[1] On May 26, 1993, Judge Thomas ordered that the Defendant be transferred to CAPP in Knox County to continue serving his Blount County sentence. In his order transferring the Defendant, Judge Thomas noted that the Defendant had been found eligible for CAPP by Knox County and that he was to serve his Knox County sentence in CAPP consecutive to his Blount County sentence.[2]

On July 10, 1996, Judge Thomas entered an order transferring the Defendant from CAPP to regular probation for his Blount County conviction. The Defendant remained on regular probation, supervised in Knox County, until 1999. In June 1999, following the Defendant's arrest in Kentucky for trafficking in cocaine, a probation violation warrant was issued against the Defendant in both Knox and Blount Counties, alleging that the Defendant had violated his probation.[3] On July 1, 1999, after a probation revocation hearing, Judge Leibowitz revoked the Defendant's probation for his Knox County conviction and ordered him to serve his sentence in incarceration. The Defendant was given jail credit for time spent in custody and time spent in CAPP since his conviction in 1993. The total amount of jail credit was 1197 days.

On June 26, 2000, the Defendant was released from prison on parole for his Knox County conviction, and he was transferred to Blount County, where the Blount County probation violation warrant was served on the Defendant.[4] Judge Thomas presided over a probation revocation hearing concerning the Blount County conviction on August 15, 2000, at which time he held that the Defendant had violated the terms of his Blount County probation. Judge Thomas then ordered the Defendant to serve the remainder of his sentence in confinement. The Defendant was given jail credit from December 1, 1992 to July 10, 1996 for time spent in jail and in CAPP for the Blount County conviction, and he was also given credit for June 26, 2000 to August 15, 2000 for time spent in jail awaiting the probation revocation hearing. Judge Thomas declined to give the Defendant credit for time spent in the penitentiary for his Knox County conviction.

## SPEEDY TRIAL VIOLATION

The Defendant first argues that the probation revocation proceeding should have been dismissed because his right to a speedy trial was violated. Both the United States and Tennessee

---

[1] Although the judgment indicated that the sentence was to be served consecutively to the Defendant's Blount County sentence, it also reflected that the Defendant's Knox County sentence would expire on May 21, 2001, eight years from the entry of judgment.

[2] It is not clear from the record why the Defendant was transferred to the Knox County community corrections program, but it does appear that the Defendant actually lived in Knox County.

[3] Only the Blount County warrant, issued June 18, 1999, is in the record. However, the Defendant's probation officer, Shirley Castelvecchi, testified that the two warrants were filed within days of each other.

[4] According to the Defendant's testimony, Blount County had placed a detainer on him while he was in the penitentiary due to the pending probation violation warrant.

Constitutions guarantee the defendant in a criminal proceeding the right to a speedy trial. See U.S. Const. amend. VI; Tenn. Const. art. I, § 9. The right to a speedy trial is also guaranteed by statute in Tennessee. See Tenn. Code Ann. § 40-14-101. According to the Supreme Court, the purpose of this guarantee is to protect the accused against oppressive pre-trial incarceration, the anxiety of concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished. Doggett v. United States, 505 U.S. 647, 654 (1992). In determining whether the right to a speedy trial has been violated, the court is to conduct a balancing test considering four factors: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted a claim to this right; and (4) whether the defendant was prejudiced by the delay. Barker v. Wingo, 407 U.S. 514, 530 (1972); State v. Bishop, 493 S.W.2d 81, 83-85 (Tenn. 1973). The length of the delay must approach one year to trigger speedy trial analysis. Doggett, 505 U.S. at 652.

In Allen v. State, 505 S.W.2d 715 (Tenn. 1974), our supreme court held "that a probation revocation proceeding is a continuation of the criminal prosecution, and, as such, the defendant . . . has a constitutional right to a speedy trial on 'the offense of violation of the terms of probation.'" Id. at 719; see also Blackwell v. State, 546 S.W.2d 828, 830-31 (Tenn. Crim. App. 1976). The court in Allen determined that a two year and eight month delay between the issuance of the probation violation arrest warrant and the probation revocation hearing violated the defendant's right to a speedy trial.[5] See Allen, 505 S.W.2d at 716-19. Relying on Allen, the Defendant argues here that the fourteen-month delay between the issuance of the probation violation warrant and his probation revocation hearing violated his right to a speedy trial. However, in State v. Utley, 956 S.W.2d 489 (Tenn. 1997), a case which post-dates Allen by twenty-three years, our supreme court explicitly held "that the issuance of an arrest warrant alone does not trigger a speedy trial analysis and that the right to a speedy trial is not implicated until there is an arrest or a formal grand jury accusation." Id. at 491. Because there is no formal grand jury accusation in a probation revocation proceeding, it would appear that an actual arrest for the probation violation would be the triggering factor for a speedy trial right.[6] See Tenn. Code Ann. § 40-35-311(b) ("Whenever any person is arrested for the violation of probation and suspension of sentence, the trial judge . . . shall, at the earliest practicable time, inquire into the charges and determine whether or not a violation has occurred.") (emphasis added); State v. Steve Joyner, No. 03C01-9701-CC-00036, 1998 WL 47878, at *2 (Tenn. Crim. App., Knoxville, Feb. 6. 1998) (finding that the defendant's arrest for violation of probation triggered speedy trial right). Accordingly, the Defendant's speedy trial right was not triggered until June 26,

_____

[5]The defendant in Allen was not served with the probation violation warrant until the day of the probation revocation hearing. He had been incarcerated on other charges, and no action was taken regarding the probation violation warrant until the defendant inquired about it. See Allen, 505 S.W.2d at 716.

[6]We note that recent cases of this Court have cited Allen for the proposition that a lengthy delay between the issuance of a probation violation warrant and the hearing on the probation revocation may violate a defendant's right to a speedy trial. See State v. Randy R. Wilson, No. M2000-01537-CCA-R3-CD, 2001 WL 523368, at *2 (Tenn. Crim. App., Nashville, May 16, 2001); State v. Lawrence Ralph, Jr., No. M1999-01635-CCA-R3-CD, 2000 WL 775592, at *1-2 (Tenn. Crim. App., Nashville, June 16, 2000), perm. app. denied (Tenn. Dec. 27, 2000). Nevertheless, we believe that the conclusions we have reached in this case best follow the law as set forth by the supreme court in Utley. See Utley, 956 S.W.2d at 491.

2000, when he was served with the warrant and arrested for violation of probation. It follows that the month and a half delay between the Defendant's arrest and his probation revocation hearing did not violate his right to a speedy trial. See Utley, 956 S.W.2d at 494 (stating that the "delay must approach one year to trigger" speedy trial analysis).

Nevertheless, because the Defendant's main complaint is the delay between the issuance of the probation violation warrant and his return to Blount County to answer to the warrant, our inquiry does not end with the speedy trial analysis. While the delay between the commission of an offense and the formal commencement of adversarial proceedings does not violate a defendant's constitutional right to a speedy trial, that delay may infringe upon a defendant's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 9 of the Tennessee Constitution. See Utley, 956 S.W.2d at 495; State v. Gray, 917 S.W.2d 668, 671 (Tenn. 1996); State v. Dykes, 803 S.W.2d 250, 255 (Tenn. Crim. App. 1990). In United States v. Marion, 404 U.S. 307 (1971), the Supreme Court stated, "[T]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the preindictment delay . . . caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." Id. at 324. In State v. Dykes, this Court relied on Marion to set forth the following test to be applied in assessing pre-accusatorial delay:

> Before an accused is entitled to relief based upon the delay between the offense and the initiation of adversarial proceedings, the accused must prove that (a) there was a delay, (b) the accused sustained actual prejudice as a direct and proximate result of the delay, and (c) the State caused the delay in order to gain tactical advantage over or to harass the accused.

Dykes, 803 S.W.2d at 256. Although our supreme court altered this test somewhat in situations where the State is unaware of the offense during the period of delay, it has indicated that the Dykes test is the appropriate test to apply in cases involving pre-accusatorial delay were the State is aware of the offense. See State v. Carico, 968 S.W.2d 280, 284-85 (Tenn. 1998); Utley, 956 S.W.2d at 495; Gray, 917 S.W.2d at 673.

According to the Criminal Complaint of Bell County, Kentucky, which charges the Defendant with trafficking in cocaine, the Defendant committed the alleged offenses on March 11 and March 12, 1999. He was arrested in Middlesboro, Kentucky for those offenses on May 11, 1999. It is not clear from the record when the State of Tennessee was made aware of the Defendant's Kentucky arrest, but the probation violation warrant was filed on June 18, 1999. The warrant alleged that the Defendant violated his probation by failing to obey the laws of the United States, failing to report all arrests, failing to inform his probation officer before leaving the state, and having possession of illegal drugs. The warrant was not served on the Defendant until June 26, 2000. Thus, it is evident that there was a delay of over a year from the time the Defendant allegedly committed the probation violations and the time he was arrested and accused of those violations. However, while we find that there was a delay, we also find that the Defendant has failed to prove that he was prejudiced by the delay or that the State caused the delay in order to gain tactical advantage over him or to harass him.

-4-

It appears that the delay was caused in part by confusion on the part of the trial judge in Knox County regarding the Defendant's Knox County sentence. Although the Defendant's Knox County sentence was to be served consecutively to his Blount County sentence, which would not expire until December 1, 2000, the judgment erroneously reflected that the Defendant's Knox County sentence would expire on May 21, 2001. Also, the Defendant was transferred to CAPP in Knox County to serve his Blount County sentence, and he was ultimately transferred from CAPP to regular probation, where he was supervised in Knox County. The Defendant's Knox County probation officer filed probation violation warrants in both Knox and Blount Counties. The Knox County judge then held a probation revocation hearing in which she determined that the Defendant had violated his probation, and she ordered him to serve his Knox County sentence in confinement. In her order revoking the Defendant's probation, the judge noted that his sentence was due to expire on May 21, 2001, and she gave him jail credit for the time he had spent in jail and in CAPP since the date of his conviction in Knox County in 1993. In short, the Knox County judge did not require that the Defendant serve his Knox County sentence consecutively to his Blount County sentence. The Defendant was sent to the state penitentiary, and he was not served with the Blount County probation violation warrant until after his release on parole for his Knox County sentence. In August 1999, shortly after being sent to the state penitentiary, the Defendant filed a pro se petition in Blount County to allow his Blount County sentence to be served concurrently with his Knox County sentence, and in September 1999, the public defender was appointed to represent the Defendant in that matter. However, no action was ever taken on that petition. Thus, while the State was clearly at fault for the delay, it does not appear that the State intentionally caused the delay in order to harass the Defendant or to gain a tactical advantage over him.

Additionally, the Defendant has failed to show that he was prejudiced by the delay. His Knox County probation officer was available to testify at the hearing, and no other potential witnesses were identified. The Defendant's only claim of prejudice is that if he had been timely served with the warrant and had his probation revoked in Blount County, as he had in Knox County, he would have received an additional year of jail credit toward the service of his sentence. When the Blount County judge revoked the Defendant's probation, he declined to give the Defendant jail credit for the time spent in jail on his Knox County sentence because the Knox County sentence was supposed to be served consecutively to his Blount County sentence. In refusing to give the Defendant that jail credit, the judge noted that the Defendant has "greatly benefitted from the way this has developed." We agree with the trial judge. When the Defendant was originally sentenced in Knox County, he understood that his Knox County sentence was to be served consecutively to his Blount County sentence. He cannot now claim that he was prejudiced in Blount County because the Knox County trial judge mistakenly gave him jail credit that he did not deserve. Moreover, instead of prejudicing the Defendant, the delay likely benefitted the Defendant. Had the Defendant first had his probation revoked in Blount County, the Knox County judge likely would have realized the discrepancy on the judgment form and enforced her order that the sentences be served consecutively. We therefore find no actual prejudice.

Because the Defendant was unable to establish that he sustained actual prejudice as a direct and proximate result of the delay and that the State caused the delay in order to gain a tactical advantage over or to harass him, we find no due process violation. This issue therefore has no merit.

REVOCATION OF PROBATION

The Defendant next argues that the trial court erred by revoking his probation. A trial court may revoke a sentence of probation if it determines by a preponderance of the evidence that the conditions of probation have been violated. Tenn. Code Ann. § 40-35-311(e). Upon revocation of probation, the trial court has the authority to cause the original judgment to be executed as it was originally entered. See id. § 40-35-310; State v. Hunter, 1 S.W.3d 643, 646 (Tenn. 1999). The decision to revoke probation is in the sound discretion of the trial judge. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). The judgment of the trial court will be upheld on appeal unless there has been an abuse of discretion. State v. Williamson, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981). To find an abuse of discretion in a probation revocation case, an appellate court must determine that the record is void of any substantial evidence that would support the trial court's decision that a violation of the conditions of probation occurred. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). Proof of a probation violation is sufficient if it allows the trial court to make a conscientious and intelligent judgment. State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984).

We are unable to find an abuse of discretion in this case because substantial evidence supports the trial judge's conclusion that a violation of the conditions of probation occurred. The Defendant's probation officer, Shirley Castelvecchi, testified that she filed the probation violation warrant because the Defendant was arrested in Kentucky on new drug charges, and he did not inform her of those new charges. Also, the Defendant did not have permission to be outside the state of Tennessee, and she discovered that he maintained an apartment in Kentucky that she did not know about. She discovered this information about new charges and an apartment in Kentucky when the Kentucky officials contacted her. At the time of the hearing, the charges in Kentucky were unresolved. Castelvecchi testified that the Defendant did make payments on his court costs, but he made sporadic payments instead of regular payments. She said that the Defendant had to go to court on several occasions in Knox County because of failure to pay court costs. Also, while the Defendant would report to her, he would often cancel his appointments and then reschedule them several times a month.

The Defendant admitted that he was arrested in Kentucky and charged with trafficking in cocaine, but he asserted that he was not guilty of those offenses. He also asserted that he did not live in Kentucky but instead lived in Knoxville. He testified that he had paid all his court costs in Knox County, but he had not paid any in Blount County because he did not know that he had any. He admitted that he was found to be in violation of probation in Knox County, and he did not appeal that decision.

In light of the Defendant's admission that he was arrested in Kentucky on new drug charges, the evidence clearly establishes that the Defendant was outside the state of Tennessee. Also, the Defendant did not dispute that he failed to inform his probation officer of the new charges or that he did not have permission to be outside the state of Tennessee. The Defendant admitted that he failed to pay any court costs in Blount County. Based on this evidence of probation violations, we conclude that the trial judge did not abuse his discretion by revoking the Defendant's probation.

The judgment of the trial court is affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE